BOUTALL, Judge.
This case is based on workman’s compensation benefits and was consolidated for trial with a tort claim against executive officers arising out of the same occurrence, No. 9389, on our docket, 360 So.2d 613. The trial court awarded total and permanent disability benefits and the employer appeals. The employee is also an appellant, seeking in this case an award of attorney’s fees as penalty.
James Battiste was working as a general cleanup man for L. A. Frey & Sons, Inc., and when he was attempting to unclog a drain, the cleaning solution sprayed back into his face and eyes, causing the injuries complained of. The basic issue before us is the extent and permanence of those injuries.
Battiste had lost the sight in his left eye in an industrial accident in 1966, prior to his employment with Frey in 1970. Other than this blindness in one eye, he had experienced no problems with either eye during his tenure at Frey, until the accident on November 26, 1974. The solution that splashed back into his eyes was hot water and Oakite “Rustripper”. Plaintiff’s eyes' were washed out and he was taken to St. Claude General Hospital and then referred to Dr. Hilliard Haik, an opthalmologist, for further treatment. He was paid benefits from November 26, 1974 until February 17, *612 1975, at which time he returned to work at Frey in a different department.
The plaintiff’s eyes never did become completely cured, and he began experiencing more and more irritation. As a result of this, he sought further treatment from Dr. Haik, and in August, 1975, he also sought examination by Dr. Robert Azar, who had handled his previous eye injury. Plaintiff was then relieved of his work obligation and was placed back on compensation benefits from November 24, 1975 through January 13,1976. At this time, Dr. Haik was of the opinion that Battiste could return to work, although he was still having some problem with his eyes and was not discharged medically. From this time, Bat-tiste did not return to Dr. Haik but continued treatment exclusively by Dr. Azar. He has not worked since that time.
We are convinced from the medical testimony that plaintiff continues to experience problems with his eyes. As we see it, plaintiffs right or good eye, is not by itself suffering from the injuries sustained in the accident. However, his left or blind eye, is affected by the results of the accident and there is a sympathetic reaction which causes the good eye to become red and irritated, causing tearing and blurry vision, reducing the degree of vision obtainable through the good eye. The degree of loss of vision will vary with the sympathetic irritation, and Dr. Azar has testified that he had never been able to observe a loss of less than 8 to 10% of the good eye. The issue thus revolves around the rather neat problem that the good eye is not itself injured, and the loss of vision in that eye (presuming the other was not blind) is not of itself sufficient to constitute total disability. This problem was recognized at trial time and explained by Dr. Azar. This workman does not present a case where a simple, mathematical formula of loss of vision can be applied. The controlling factor is the relationship that the impairment to the eye bears to the workman’s ability to work. The impairment in this case, which varied from a minimum of 8% to more than 50% on occasions, so reduces this man’s ability to work, that he could only work in a protected environment with shortened hours. There is a preponderance of evidence supporting the declaration of disability by the trial judge, and we agree that he is totally and permanently disabled as long as the condition exists.
The only other issue in this case is whether attorney’s fees should be awarded for failure to pay claims under the provisions of R.S. 23:1201.2. Because of the peculiar way in which the trial court judgment was drawn, we first considered the possibility of remand. The original judgment read:
“ * * * that there be judgment * * together with interest and costs from date of judicial demand, expert’s fees and attorney’s fee, for Workman Compensation and permanent and total disability * * *
New trial was moved, pointing out failure to set any amount of attorney’s fees, among other things, and finally an amended judgment was signed containing the same quoted words, amending other portions of the judgment and stating:
“ * * * all expert fees be set at $175.00 each”.
Nothing was said about any amount of attorney’s fee. We were thus confronted with the question of whether the judge was awarding attorney’s fees as a penalty under R.S. 23:1201.2, or whether he was simply referring to the fact that attorney’s fees were included within the award of compensation due by plaintiff to his attorney, inasmuch as several attorneys had been of record for plaintiff. However, we have decided against remand, because the record before us does not disclose plaintiff’s entitlement to attorney’s fees.
The initial petition in this case was filed on September 12, 1975. At that time plaintiff’s eyes had generally recovered from the initial effects of the accident, and he had returned to work in another capacity. He had been paid benefits for time lost from work and his medicals were being paid. Shortly before filing suit was apparently the time when the secondary phase of his *613 condition began, and he started experiencing the irritation and resulting impairment to his good eye. We note that it was just one month prior to suit, in August, 1975, that he consulted Dr. Azar for the first time. In any event treatment was continued after the filing of suit and his condition worsened thereafter, resulting in his being placed again under compensation benefits, and the medicals being paid until January, 1976. In January, Dr. Haik had concluded that plaintiff could return to work, and Dr. Azar had not yet begun treatment. During this period, it was considered that plaintiff was suffering irritations which were temporary in nature and were being resolved by treatment, and it was not until later, during the course of Dr. Azar’s treatment, that the full extent of plaintiff’s impairment crystallized. During all of this period there was the considerable problem of relating the impairment of vision to the ability to perform work, which we have discussed above.
A compensation insurer cannot continue in a refusal to pay benefits if it becomes reasonably apparent, even after suit is filed, from all available information, that the claimant is clearly entitled to benefits. Nevertheless, we cannot say from this record that there was ever a time, before or . after suit was filed, that defendant was not reasonable in insisting on its day in court for trial of its defense.
For the reasons above expressed, the judgment appealed from is amended by deleting therefrom any award of attorney’s fees under R.S. 23:1201.2, and as thus amended, it is affirmed at cost of defendants-appellants.

AMENDED AND AFFIRMED.